UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN BARTLEY,

    Petitioner,

v.                                             Case No. 2:15-cv-205
                                                     HON. GORDON J. QUIST

DUNCAN MACLAREN,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner John Bartley, filed this petition for writ of habeas corpus challenging his jury conviction for manslaughter.  Petitioner was convicted of manslaughter for causing the death of another individual with his motor vehicle in violation of MCL § 750.321 and was convicted of failing to stop at the scene of an accident resulting in serious bodily harm in violation of MCL § 257.617.  Petitioner was sentenced to a prison term of 14 to 30 years for his manslaughter conviction and a prison term of 4 years, 9 months to 10 years for his failure-to-stop conviction.  The Michigan Court of Appeals summarized the facts as follows:

> On the evening of October 30, 2012, Bartley struck the victim, Joseph Shoyrer, with his vehicle. Shoyrer died as a result of his injuries. Cheryl McDaniel, Shoyrer's girlfriend, testified that she, Shoyrer, Bartley, Paula Nappier went to a Halloween party together in a yellow Mustang. Nappier, who was Bartley's girlfriend, testified that the Mustang had a problem with its power steering, but that Bartley had driven the Mustang before that evening and knew about its power steering problem.
>
> Jason Rupe testified that Bartley was driving recklessly when he arrived at the party, and that Bartley almost hit him when he turned a corner too fast. Michael Rupe testified that Bartley and Shoyrer were friendly with each other when they arrived, and that Bartley

introduced Shoyrer as his brother. Nappier testified that during the party, she was trying to secure a way to return Bartley home safely because he "was beyond that level of being able to legally drive a motor vehicle."

Several witnesses testified that Bartley and Shoyrer engaged in two fistfights at the party. After the second fight, Shoyrer began walking away. Mike Moran, the owner of the home at which the party was held, testified that he did not allow Bartley to return to the party after the second fight, and that Bartley then walked to a yellow Mustang and "[took] off down the road squealing his tires." Stephen Rager testified that he spoke with Bartley shortly before Bartley and Shoyrer fought, and that he was "extremely intoxicated."

The witnesses all testified that they heard squealing tires, either one or two loud thumps, and some witnesses testified that they saw brake lights. Wendy Thysse testified that she heard a crash, and then people began yelling "he hit him, he ran him over." Michael Rupe testified that he saw Bartley leave the subdivision in the Mustang. Jason Rupe testified that he entered his car and drove down the road to see what Bartley had hit. Jason Rupe discovered a mailbox in the middle of the road, and Shoyrer in a ditch.

Kelly Hart and Brandon Singleton, who lived across the street from Bartley, both testified that they saw Bartley and two men attempt to get the yellow Mustang out of a ditch in front of Bartley's residence that evening. Singleton testified that Bartley appeared "highly intoxicated."

Michigan State Police crime lab personnel discovered blood spatter on the Mustang, concentrated on the windshield. Detective Sergeant Thomas Macyauski testified that there was no evidence that anyone had attempted to clean off the spatter. Macyauski testified that he also recovered a shoe from the Mustang. The shoe matched a single shoe that he found near Shoyrer's body.

Nappier testified that she spoke with Bartley by telephone later that evening or early the next morning, and that Bartley was not aware that he had hit the mailbox or Shoyrer. She testified that she told Bartley that "people were saying" that he struck Shoyrer, but that Bartley did not acknowledge that he had. In a recorded telephone call with his mother from jail, Bartley told his mother that he remembered hitting the mailbox, but was certain that he did not strike anybody.

2

Michigan Court of Appeals decision (ECF No. 11-18) (PageID.1595-1596).  Petitioner appealed his convictions, and the Michigan Court of Appeals remanded the matter for resentencing.  The Michigan Supreme Court denied leave to appeal.  After Petitioner was resentenced, Petitioner appealed again to the Michigan Court of Appeals.  Petitioner also filed a petition for writ of habeas corpus in this court which was denied without prejudice for failure to exhaust state court remedies *Bartley v. Rapelje*, No. 1:14-cv-117.  The Michigan Court of Appeals remanded the case again "for clarification related to defendant's sentence for his parole violation, clarification that his sentences in this case do not begin to run until defendant has completed the sentence for his parole violation, and recalculation of how many days of jail credit, if any, defendant should receive for his sentences in this case."  Michigan Court of Appeals decision (ECF No. 11-22) (PageID.1795).  Petitioner did not appeal this decision to the Michigan Supreme Court.  The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now ready for decision.

>   Petitioner alleges that:
>
>   I. Petitioner's waiver of counsel was equivocal and invalid; Petitioner did not want to represent himself and he was denied his Sixth Amendment right to counsel at one of the most critical stages of trial, jury selection; although this was structural error and Petitioner does not need to demonstrate prejudice, it is readily apparent from the *voir dire* that Petitioner was severely prejudiced by the absence of counsel; reversal is required.
>
>   II. The trial court abused its discretion and denied Petitioner his right to a fair and impartial jury by denying his challenges for cause; Petitioner was denied a fair trial, and an impartial jury by the seating of several biased jurors.
>
>   III. The trial court abused its discretion and denied Petitioner a fair trial by denying Petitioner's motion for adjournment where counsel had newly been retained and had no time to prepare for trial.

3

> IV. The trial court erred in refusing to strike challenged inaccurate and irrelevant information in the presentence report; the challenged information must be stricken.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court

decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

First, Petitioner claims that his waiver of counsel was invalid and the trial court violated his Sixth Amendment right to counsel. Given the importance of the right to counsel, a defendant's request to proceed without an attorney must be unequivocal, and the waiver of his

5

right to counsel must be done knowing, voluntary and intelligent.  *See Faretta v. California*, 422 U.S. 806, 834-35 (1975); *Johnson v. Zerbst,* 304 U.S. 458, 464-65 (1938).  For any such waiver to be effective, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Faretta*, 422 U.S. at 835, (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  Whether a defendant's choice was made with "eyes open" generally "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Zerbst,* 304 U.S. at 464-65.  The Supreme Court has "not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants against waiving the right to counsel."[1]  *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).  However, less rigorous warnings are required before trial than at trial "because, at that stage, 'the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial.'"  *Tovar*, 541 U.S. at 90 (quoting *Patterson v. Illinois*, 487 U.S. 285, 299 (1988)).

        Here, the record clearly shows that Petitioner's decision to proceed *pro se* was made knowingly, voluntarily, and intelligently.  (ECF No. 11-7) (PageID. 408-423).

---

[1] The Court notes that the Sixth Circuit requires federal district courts within the circuit to conduct an inquiry as set forth in *1 Bench Book for United States District Judges* 1:02-2 (3d ed. 1986) before accepting a waiver of a right to an attorney.  *King v. Bobby,* 433 F.3d 483, 492 (6th Cir. 2006); *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987).  However, this type of formal, detailed inquiry is not required by clear Supreme Court precedent.  *King,* 433 F.3d at 492.  Accordingly, in the context of federal habeas review, there is no script that a state court must follow in determining whether a criminal defendant has made a "knowing, voluntary, and intelligent" waiver of counsel.  *Id.*  Rather, the state court must reasonably apply Supreme Court precedent, which requires looking at the "whole record" to determine if the defendant made a knowing and intelligent waiver.  *Id.*

| | |
|---|---|
| Court: | Okay.  Now, you also understand that if you have a trial and you are representing yourself, you cannot at a later time – if the jury comes back and finds you guilty of anything, come back later and say, you know what, I didn't have a fair trial because I didn't have an attorney, or there was ineffective counsel. That means that my attorney who was there didn't do something.  You understand you are waiving any right to that kind of claim?  Now, I'm not suggesting automatically that you're going to get convicted.  That's up to the jury, but if you are convicted and if you wish to appeal, you can't say, well, I appeal because I didn't have an attorney with me.  Do you understand that? |
| Defendant: | Yes, I understand that. |
| The Court: | Okay.  Now, is [representing yourself] still what you want to do? |
| Defendant: | Yes, I do. |

(ECF No. 11-7) (PageID.412-413). As evident from the trial court transcript, the trial court informed Petitioner that he would be waiving his right to appeal the issue regarding his request for self-representation.  Petitioner clearly stated that he understood risks of self-representation.  When Petitioner later attempted to appeal this issue, the Michigan Court of Appeals rejected this claim:

> Our review of the record indicates that the trial court painstakingly complied with the Michigan Court Rule's requirements concerning the procedure by which an indigent defendant may waive his counsel. Bartley indicated that he understood each aspect when the trial court explained to him the charges, the maximum possible prison sentences, the mandatory minimum sentences, the risks of self-representation, and that he could consult with [defense attorney] Hunt concerning his choice.  Bartley repeatedly indicated throughout the proceedings that he wished to represent himself. Thus, the trial court did not clearly err in finding that Bartley's waiver of counsel was knowing, intelligent, and voluntary, and did not abuse its discretion when it granted Bartley's motion to proceed in propria persona.

*****

Bartley requested substitute counsel because he generally did not trust Hunt and disagreed with Hunt's professional judgment when Hunt asked the trial court to determine his competence to stand trial and when Hunt was present at a polygraph examination. Bartley also indicated that he did not trust Hunt because he believed that Hunt colluded with the prosecution to frame Bartley when Hunt informed Bartley of a plea deal offered by the prosecution, which Hunt was responsible to do, in order to help Bartley make an informed decision whether to plead guilty. Bartley further indicated that he believed that the prosecution was threatening Hunt's family, which Hunt denied when questioned by the trial court. We conclude that the trial court did not abuse its discretion when it denied Bartley's motion for substitute counsel after Bartley alleged only general distrust of his appointed counsel.

*****

Bartley finally argues that his waiver was equivocal because he indicated that he only wanted to represent himself because he did not want to be represented by Hunt. We disagree with this characterization of Bartley's waiver of his right to counsel. Bartley interrupted a hearing on a different motion to state that he wished to represent himself. At the hearing on his motion to represent himself, Bartley unequivocally stated several times that he wanted to represent himself. Although Bartley later filed a motion for substitute counsel and stated that he no longer wanted to represent himself, after the trial court denied the motion, Bartley again indicated that he wanted to represent himself. After hearing Bartley's separate motion concerning a private investigator, the trial court *again* asked Bartley if he wanted to represent himself, and Bartley *again* answered affirmatively. Further, it is only if the trial court gives the defendant clear choices and the defendant refuses to choose self-representation that the defendant's waiver is equivocal. Here, the trial court gave Bartley clear choices and he *did* choose self-representation.

Notwithstanding Bartley's single indication that he no longer wished to represent himself, we conclude that the trial court did not clearly err when it found that Bartley unequivocally waived his right to counsel. The trial court properly presented Bartley's options as (1) proceeding with his second appointed counsel or (2) representing himself, and Bartley subsequently indicated several times that he wished to represent himself rather than be represented by appointed counsel.

Michigan Court of Appeals decision (ECF No. 11-18) (PageID.1599-1600) (citations omitted).

8

In the opinion of the undersigned, Petitioner made his choice to proceed *pro se* with his "eyes wide open," and the trial court made the determination that Petitioner's decision to waive counsel and represent himself was made knowingly, voluntarily and intelligently based on the "whole record." The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Next, Petitioner claims that the trial court denied his right to a fair trial by failing to empanel an impartial jury. When a juror's impartiality is called into question, the relevant issue is "'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality be believed.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). In order for a petitioner to be entitled to habeas relief based on a juror's non-disclosure during voir dire, the petitioner "must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough v. Greenwood*, 464 U.S. 548, 556 (1984). The *McDonough* test applies regardless of whether it is alleged that a juror intentionally concealed information. *Dennis*, 354 F.3d at 520, (applying *McDonough*, which involved an inadvertent failure of a juror to disclose, to cases in which a juror intentionally failed to disclose)). As the *McDonough* Court explained, "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough*, 464 U.S. at 556. "'If a juror is found to have deliberately concealed material information, bias may be inferred.

9

If, however, information is not concealed deliberately, the movant must show actual bias.'" *Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995) (quoting *United States v. Patrick*, 965 F.2d 1390, 1399 (6th Cir. 1988)).

The question of bias of an individual juror at a state criminal trial is one of fact. *Dennis*, 354 F.3d at 520, (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)); *see also Sizemore v. Fletcher*, 921 F.2d 667, 672-73 (6th Cir. 1990), (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)). A state court decision based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state court proceeding and not simply erroneous or incorrect. *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006), (citing *Williams v. Taylor*, 529 U.S. 362, 409-11(2000)); *see also Young v. Hofbauer*, 52 F. App'x 234, 237 (6th Cir. 2002). The state court's factual determination is entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Michigan Court of Appeals addressed this claim and denied that the Petitioner's constitutional right to a jury was violated.

> Bartley unsuccessfully attempted to have jurors removed for cause. The trial court later asked Bartley several times if he wished to remove a juror from the panel "for any reason." Bartley answered negatively each time. After the final time that the trial court asked Bartley whether he wished to remove a juror for any reason, at the prosecution's request, the trial court asked Bartley whether he understood that, if he did not have any further challenges and if he agreed to the selected jury, "this is the jury you're going to have." Bartley responded "[y]es, sir." Bartley had peremptory challenges remaining and clearly expressed that he was satisfied with the jury. Thus, he has waived this issue on appeal.
>
> Further, a defendant alleging that the trial court abused its discretion in failing to remove a juror for cause must also show that the decision prejudiced him. A juror is sufficiently unbiased if "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Here, Bartley has not alleged prejudice, and each juror expressed his or her ability to

10

> impartially judge the evidence. Thus, even were we to review this issue, Bartley has not shown any error that warrants reversal.

Michigan Court of Appeals decision (ECF No. 11-18) (PageID.1601) (citation omitted). The Court of Appeal's decision is entitled to a presumption of correctness. Further, Petitioner had the burden to prove that the juror(s) failed to answer the questions asked by the court dishonestly. Petitioner did not meet that burden of proof, offering no evidence that jurors lied to the court. Petitioner claims that the trial court was wrong to deny his challenges of potential jurors for cause. Requiring a defendant to use peremptory challenges to cure erroneous refusals by the trial court to excuse jurors for cause is not irrational or arbitrary. *See Ross v. Oklahoma*, 487 U.S. 81, 90 (1988). As the Court of Appeals stated, Petitioner still had peremptory challenges remaining. Petitioner asserted that he was satisfied with the selected jurors. Petitioner clearly waived his right to challenge the jury selection. In the opinion of the undersigned, Petitioner's right to an unbiased jury was not violated, and the Court of Appeal's decision is not contrary to any established federal law as determined by the United States Supreme Court.

In addition, Petitioner claims that the trial court abused its discretion and denied Petitioner a fair trial by denying Petitioner's motion for adjournment. Motions for adjournment for further preparation are treated the same as motions for a continuance. *See Seaton v. Jabe*, 983 F.2d 1068 (6th Cir. 1993). The appropriateness of a continuance is evaluated on a case-by-case basis and depends on the circumstances of a particular case. *Id.* (citing *Ungar v. Saraffite*, 376 U.S. 575, 598 (1964)). Factors to consider when determining if the trial court abused discretion in denying a continuance are: "the length of delay; previous continuances; inconvenience to litigants, witnesses, counsel, and the court; whether the delay is purposeful or caused by the accused; the availability of other competent counsel; the complexity of the case; and whether denying the

11

continuance will lead to identifiable prejudice". *Id.* The Michigan Court of Appeals determined that the trial court did not abuse its discretion by denying Petitioner's motion for adjournment.

> Bartley argues that the trial court abused its discretion by denying his retained counsel's motion for an adjournment on the second day of trial. Counsel asked the trial court for additional time to review reports, witness statements, and photographs that Bartley had not previously seen, and to obtain an accident reconstructionist to testify on Bartley's behalf.
>
> We conclude that the trial court did not abuse its discretion when it denied Bartley's motion for an adjournment on the second day of trial. Bartley asserted his constitutional right to present a complete defense and had not requested previous adjournments. However, the trial court determined not to grant Bartley's motion because, although Bartley's request had merit, Bartley had "creat[ed] the problem himself[,]" and the interests of justice and efficiency of the court weighed against his request since the trial court had already impaneled the jury. The trial court granted Bartley's counsel 12 hours to review the evidence and photographs. The trial court made proper considerations and its factual findings were not clearly erroneous. Thus, we conclude that the trial court's decision fell within the permissible range of principled outcomes.
>
> Further, Bartley has not demonstrated actual prejudice. Bartley primarily sought the adjournment to obtain an accident reconstructionist to examine the evidence and testify on Bartley's behalf. Even though the trial court denied Bartley's motion, counsel was able to obtain an expert accident reconstructionist, Mark Gallo. Gallo testified that from the photographs, he was able to identify areas of wheel lock—where the driver would be unable to turn the car—from the skid marks, including the area of impact with Shoyrer. Gallo also testified that the photographs showed evidence of evasive driving. Because Bartley has not demonstrated actual prejudice, we will not reverse his convictions on this ground.

Michigan Court of Appeals decision (ECF No. 11-18) (PageID.1602-1603). In the opinion of the undersigned, the trial court's denial of a motion for adjournment did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon

an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Finally, Petitioner argues that the Court erred by relying on inaccurate and irrelevant evidence from the pre-sentence report during sentencing. Petitioner has failed to develop this claim in his habeas petition. It is clear that a court violates due process when it imposes a sentence based upon materially false information. *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted). Petitioner has the burden of demonstrating "first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988) (citations omitted). Petitioner presented the claim to the Michigan Court of Appeals that the trial court during his re-sentencing relied on inaccurate information. The Michigan Court of Appeals rejected that claim explaining:

> Next, defendant argues that he was denied his constitutional right to be sentenced according to accurate information because the trial court failed to consider his mental health history at the time he was resentenced. This unpreserved claim is reviewed for plain error affecting defendant's substantial rights. If a minimum sentence is within the appropriate guidelines sentence range, this Court "shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relief upon in determining the defendant's sentence." In addition MCR 6.425(A)(1)e requires that a PSIR include "the defendant's medical history, substance abuse history, if any, and, if indicated, a current psychological or psychiatric report[.]" A PSIR 'is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant."
>
> In the present case, when resentencing defendant, the trial court considered and relied on the information in the PSIR, and as stated above, defendant did not challenge the accuracy of any of the information in the PSIR regarding his mental health. In addition, when resentencing defendant, the trial court considered and relied on a report from a school psychologist that was *provided by defendant*. Finally, when resentencing defendant, the trial court

13

> relied on defendant's arguments regarding his mental health history. The trial court resentenced defendant with the guidelines. Therefore, the record does not support defendant's argument that the trial court relied on inaccurate information when it resentenced defendant because it failed to consider defendant's need for mental health treatment in determining an appropriate sentence. Further, because defendant was sentenced based on accurate information, his due process rights were not violated. And, because there was no error with defendant's new sentence, defendant is not entitled to resentencing and the issue of reassignment of this case for resentencing is moot.

Michigan Court of Appeals decision (ECF No. 11-22) (PageID.1799) (citations omitted). In this case, Petitioner has not met his burden of showing that he was sentenced based upon inaccurate information. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of Petitioner claims of unknowing waiver of counsel, a biased jury, and error in not ruling for the motion for adjournment was debatable or wrong.  Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   July 3, 2017               /s/ Timothy P. Greeley
                                    TIMOTHY P. GREELEY
                                    UNITED STATES MAGISTRATE JUDGE